UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GRANT L.,

                           Plaintiff,

        -v-

OXFORD HEALTH PLANS, INC. ET AL.,

                         Defendants.

22 Civ. 1320 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

The sole issue remaining in this case seeking benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, is whether plaintiff Grant L., who voluntarily dismissed this lawsuit in connection with what he characterizes as a settlement, is entitled to attorneys' fees, costs, and prejudgment interest.

On February 16, 2022, Grant L. initiated this action, seeking mental health benefits arising from the allegedly improper denial by Oxford Health Plans, Inc., Oxford Health Insurance, Inc., and several John Does (together, "defendants")[1] of a claim he submitted on behalf of his son, a beneficiary of the United Healthcare Oxford Freedom Plan (the "Plan"). Complaint ¶¶ 4–24. On May 12, 2022, defendants moved to dismiss. Dkt. 14. On June 2, 2022, Grant L. filed an amended complaint. Dkt. 21 (the "FAC"). On June 30, 2022, defendants moved to dismiss the FAC. Dkt. 25.

In December 2022 and January 2023, while the motion to dismiss was pending, the parties alerted the Court that they had reached an agreement with respect to Grant L.'s ERISA

---

[1] Grant L.'s Complaint, Dkt. 1, named other defendants, all since dismissed. They are irrelevant to the instant motion.

benefits, and that Grant L. was voluntarily dismissing, with prejudice, his claims for benefits, while reserving the right to seek attorneys' fees, costs, and prejudgment interest. *See* Dkts. 34–41. On February 3, 2023, Grant L. filed a memorandum of law in support of such relief, Dkt. 42 ("Mem."), plus supporting materials, Dkts. 42-1, 42-2, 42-3, 42-4. On March 8, 2023, defendants filed a memorandum in opposition. Dkt. 49 ("Opp."). On April 5, 2023, Grant L. replied. Dkt. 54.

ERISA provides that "[i]n any action [brought under ERISA] . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1); *see also LaForest v. Honeywell Int'l Inc.*, 569 F.3d 69, 74 (2d Cir. 2009). Before a court may award attorneys' fees under this section, however, a fee claimant must "show some degree of success." *Hardt v. Reliance Standard Life Ins.*, 560 U.S. 242, 255 (2010) (internal quotation omitted). This prerequisite is not satisfied by "achieving trivial success on the merits or a purely procedural" victory; it is met only if "the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Id.* (internal quotation marks omitted).

The Court's § 1132(g)(1) analysis accordingly begins "by determining whether a party has achieved some degree of success on the merits," but the Court "is not required to award fees simply because this precondition has been met," *id.*—other factors may be germane. Indeed, the Second Circuit once required courts to consider five factors in resolving motions in ERISA actions for attorneys' fees. These are:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the

2

relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987). However, in *Hardt*, the Supreme Court clarified that a court, in its discretion, may—but is not obliged to—consider these factors. The Supreme Court there held that the Fourth Circuit's analogous five-factor test for awarding attorneys' fees "bear[s] no obvious relation to § 1132(g)(1)'s text," and that the consideration of these five factors was therefore "not required for channeling a court's discretion when awarding fees" under ERISA. *Hardt*, 560 U.S. at 255. The Court thus, while not "foreclos[ing]" a court from considering the five factors in deciding whether to award fees, *id.* at 2158 n.8, abrogated precedents, including from the Second Circuit, that had made consideration of these factors mandatory. *See Levitian v. Sun Life & Health Ins.*, 486 F. App'x 136, 141 (2d Cir. 2012). The Second Circuit has since held that a "court may apply—but is not required to apply—the *Chambless* factors in channeling its discretion when awarding fees" under ERISA. *Toussaint v. JJ Weiser, Inc.*, 648 F.3d 108, 110–11 (2d Cir. 2011).[2]

Analysis of Grant L.'s claim of success requires a review of the idiosyncratic history of his claim for benefits. Grant L.'s son suffers from "a host of mental and behavioral health issues." Mem. at 10. In March 2020, the son sought inpatient treatment at Daniels Academy, a residential treatment facility. *Id.* Grant L. sought payments for this treatment, which he believed was covered under an employee welfare benefit plan sponsored by his employer. *Id.* Grant L.'s and defendants' accounts of what follows then diverge.

---

[2] It is an error of law, however, to do no more than recite the *Chambless* factors as a basis to deny an application attorneys' fees. *Levitian*, 486 F. App'x at 141. A court must "explain in writing the basis for its decision." *Id.* (citing *Connors v. Conn. Gen. Life Ins.*, 272 F.3d 127, 137 (2d Cir. 2001)).

3

In Grant L.'s telling, defendants initially denied the claim. This, Grant L. asserts, required Grant L. to pay for the treatment. *Id.* On February 16, 2022, Grant L. filed this action seeking unpaid benefits under ERISA. Dkt. 1. Grant L. represents that, "at some point that is still unclear to" him, defendants began issuing explanations of benefit ("EOBs") informing him that his claims for his son's treatment had been approved, Mem. at 10, the implication being that this lawsuit caused the claims to be approved. Between February and September 2022, Grant L. states, defendants "parsed out partial payments, for arbitrary amounts at arbitrary dates, to both [Grant L.] and to Daniels Academy." *Id.* Grant L. represents that Daniels Academy never cashed the checks sent to it. *Id.* Instead, he states, Grant L. directed defendants to send these checks directly to Grant L. because the Academy does not work directly with insurers. *See id.*

In defendants' telling, the narrative is clearer and did not ever involve a denial of a claim for benefits. From the outset, defendants explain, "Daniels Academy electronically submitted claims to [defendants] for coverage of the costs of this treatment directing [defendants] to make all payments directly to Daniels Academy." Opp. at 4. The Academy did so, defendants state, on instructions from Grant L., who had submitted a claim form that assigned benefits directly to Daniels Academy. *Id.* at 4; *see* Dkt. 48-1 (copies of claims forms). On this basis, defendants, between January 11 and February 7, 2022, approved Daniels Academy's claims for benefits covering Grant L.'s treatment and issued benefit checks to Daniels Academy as payment in full on these claims. Opp. at 4. In other words, according to defendants, they had *approved* the request for coverage—and the reason they paid the benefits directly to the provider, Daniels Academy, was that Grant L. had directed them to do so on the claim forms. *Id.* These payments on the claims, defendants state, demonstrably began before this lawsuit commenced, and Grant L. was on notice of these payments via the EOBs. *Id.* The lawsuit, therefore, sought an award of

4

benefits *already* issued, whereas the real issue had to do with an errant instruction as to the payee for the benefit checks, and Grant L. had reason at all times to have been aware that defendants were issuing these payments directly to Daniels Academy. *Id.*

On December 12, 2022, while defendants' motion to dismiss was pending, the parties, having discussed these issues, notified the Court that defendants would be reissuing checks sent to Daniels Academy (but uncashed) to Grant L. The parties alerted the Court that they took different views as to what this outcome meant for the status of the case. Dkt. 34. In Grant L.'s telling, "[t]he [p]arties ha[d] reached a [s]ettlement as to all causes of action." *Id.* at 1. But, in defendants' view, there had been no settlement. *Id.* at 3. Rather, defendants had "simply [agreed] to reissu[e] checks"—to Grant L., instead of Daniels Academy—on benefit claims they had "approved and paid prior to the commencement of this lawsuit." *Id.* The Court directed the parties to reach consensus on the status of the case, and to update the Court by January 10, 2023. Dkt. 35. On January 10, 2023, by joint letter, Grant L. confirmed that he received the benefit check and was prepared to "dismiss all counts with prejudice." Dkt. 38. On January 11, 2023, the Court dismissed all of Grant L.'s claims against the defendants with prejudice and directed the parties to file a briefing schedule regarding Grant L.'s attorneys' fees motion. Dkt. 39.

Although the record is less developed than it would have been had the case not reached out-of-court resolution,[3] the documentary evidence that has been submitted supports defendants' account, under which defendants never denied any claims but merely directed disbursement to what proved to be the wrong recipient. Grant L. has not submitted documentary evidence

---

[3] As Judge Lynch has explained in resolving a similar post-resolution motion for attorneys' fees in an ERISA action, "the fact that . . . defendant[s] settled . . . the lawsuit limits the Court's knowledge of the case." *Lampert v. Metro. Life Ins. Co.*, No. 03 Civ. 5655 (GEL), 2004 WL 1395040, at *1 (S.D.N.Y. June 21, 2004) (noting that defendants are "to be commended for . . . settlement," and that "settlement cannot be taken as a concession of the merits").

5

corroborating his claim of an outright denial of benefits. Defendants, however, have submitted electronic claim forms, *see* Dkt. 48-1 (sealed); Dkt. 50 (refiled with redactions), and explanations of benefits, *see* Dkt 48-2, that, consistent with their account, reflect their making payments directly to Daniels Academy, beginning prior to the initiation of this lawsuit. To be sure, Daniels Academy technically may not have been the proper recipient of these checks, insofar as Grant L. claims that the provider does not work directly with insurance companies. *See* Dkt. 55 ¶ 6. But the record is clear—and Grant L. does not appear to dispute—that defendants paid the balances for Grant L.'s son's care directly to the provider. And Grant L. has not contradicted defendants' averment that they did so because they had been instructed, on the electronic claim forms, to pay Daniels Academy. In all events, the documentary record does not support the alleged denial of payments. Instead, it supports that such payments were approved, before litigation began, and were merely directed to the Academy, not Grant L., as a result of claim-form instructions.

On this record, the Court does not find that Grant L., via litigation, achieved "some degree of success on the merits." *Hardt*, 560 U.S. at 242 (internal quotation omitted). "At a minimum, [Grant L.] must demonstrate a change in the legal relationship between [himself] and . . . defendant[s] arising from the resolution of the lawsuit." *Koster v. Perales*, 903 F.2d 131, 134 (2d Cir. 1990) (internal quotation omitted). In other words, there must exist "a causal connection between the relief obtained and the litigation in which the fees are sought." *Gerena–Valentin v. Koch*, 739 F.2d 755, 758 (2d Cir. 1984). Such a connection exists if the suit was "a catalytic, necessary, or substantial factor in attaining the relief." *Id.* at 758–59. This litigation did not, however, affect defendants' determination of benefits coverage insofar as payments were being remitted to Daniels Academy before the litigation. And, as defendants note, Grant L. has not submitted any evidence that he requested that defendants reissue the payments to him, from

6

Daniels Academy, *prior* to initiating this litigation, let alone that defendants denied this request, such that the litigation could be said to have corrected the error that it challenged. Opp. at 7–8. The first evidence of a request for reissuance is from August 2022—approximately six months after Grant L. initiated this litigation. *See* Dkt. 55 ¶ 6. Accordingly, Grant L. has not shown that defendants were on notice prelitigation of a request to reissue the payments. Every indication instead is that, had such a request been made without litigation, it would have been honored.

In any event, even were the Court to find Grant L. eligible to collect attorneys' fees under § 1132(g)(1), it would decline to do so upon consideration of the *Chambless* factors. First, there is literally no evidence that defendants acted in bad faith. Having paid out the claims to Daniels Academy, defendants acted reasonably in not *also* paying Grant L. until they could confirm that Daniels Academy had not cashed the checks. *See Perreca v. Gluck*, No. 99 Civ. 1779 (RLE), 2004 WL 2793270, at *3 (S.D.N.Y. Dec. 6, 2004) ("[T]his factor requires conduct that normally involves something more than simple negligence. It implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose." (cleaned up)). Second, although defendants presumably would be able to pay a fee award, the Court believes that, given that the facts here bespeak good-faith confusion about the appropriate recipient of benefits checks and nothing more, such an award would not deter other persons from violating ERISA. The situation here "is rare enough to blunt any deterrent effect that might have otherwise been generated by an award of attorneys' fees." *Roganti v. Metro. Life Ins.*, 972 F. Supp. 2d 658, 675 (S.D.N.Y. 2013), *aff'd in part and rev'd in part*, 786 F.3d 201 (2d Cir. 2015). Third, there is no argument that this individual action "conferred a common benefit on a group of pension plan participants." *Chambless*, 815 F.2d at 871; *see Slupinski v. First Unum Life Ins.*,

7

No. 99 Civ. 0616 (TPG), 2006 WL 2266569, at *5 (S.D.N.Y. Aug. 7, 2006), *rev'd in part*, 554 F.3d 38 (2d Cir. 2009).

For the foregoing reasons, the Court declines to award Grant L. attorneys' fees under § 1132(g)(1). The Clerk of Court is respectfully directed to terminate all pending motions. For avoidance of doubt, this case is to remain closed.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: June 26, 2023
New York, New York